[No. S112505. July 21, 2005.]

In re ORLANDO ROBERTS, on Habeas Corpus

COUNSEL

Donald Specter, under appointment by the Supreme Court, for Petitioner Orlando Roberts.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Frances T. Grunder, Assistant Attorney General, and Julie L. Garland, Deputy Attorney General, for Respondent the People.

Frederick R. Bennett and Christine Zarifian for Los Angeles Superior Court as Amicus Curiae on behalf of Respondent the People.

Rita Coyne Federman, Charles A. Piccuta; Dawn N. Pilimanu; Kathryn Houck; and William S. Bateman for San Luis Obispo County Superior Court, Monterey County Superior Court, Kings County Superior Court and Solano County Superior Court as Amici Curiae.

OPINION

**GEORGE, C. J.**—In Los Angeles County, nearly 30 years ago, petitioner Orlando Roberts was convicted of first degree murder and other offenses and was sentenced, under the sentencing scheme then in effect, to an indeterminate term of life in prison. As is typical of the majority of persons convicted in that county and other counties containing major metropolitan areas, since his commitment to state prison petitioner has been incarcerated at several locations in less populous counties within the state.

Petitioner has been the subject of periodic evaluations by the Board of Prison Terms (Board) to determine his suitability to be placed on parole, and repeatedly has been found unsuitable for parole. As a consequence, petitioner has filed numerous petitions seeking a writ of habeas corpus to overturn the Board's findings of parole unsuitability and to obtain a parole date. Generally, petitioner has filed his habeas corpus petitions in a court within the county in which he then was incarcerated. Recently, the courts that have received his petitions have directed that petitioner file them in a court within another county.

We granted review to resolve an issue involving the procedural framework within which the courts consider habeas corpus petitions that challenge the Board's finding of parole unsuitability or denial of a parole date. Under the procedure generally applicable to habeas corpus petitions, the court in which such a petition initially is filed—within certain guidelines and with respect to various types of claims—has discretion to adjudicate the case or, in the event

the court determines that resolution is more appropriate in another venue, to transfer the case for resolution to a court in another county. Of course, the court in the second county has similar discretion to transfer the petition.

As might be anticipated, when a habeas corpus petition raises a claim, such as a challenge to the denial of parole, that has not been addressed in our prior decisions directing resolution of particular types of claims by a court in a county having a particular connection with the petitioner, the courts of the various counties and appellate districts have not always agreed which is the most appropriate court to adjudicate the claim. In that situation, the court that initially receives the petition frequently has ordered that it be refiled by the petitioner or directly transferred for resolution in another court. In some instances, repeated transfers have been made, with consequential delay in the adjudication of petitions and discordant relations between the courts in the affected counties.

Therefore, we decide in the present case whether a habeas corpus petition challenging the Board's finding that petitioner was unsuitable for parole should be filed in and adjudicated by a court within the county where petitioner was convicted and sentenced or instead in a court within the county where he currently is incarcerated. As we shall explain, we conclude that such a petition for writ of habeas corpus must be filed in, and addressed by, the superior court in the county where petitioner was convicted and sentenced. Although the conclusion we reach on this procedural point is contrary to that reached by the Court of Appeal, it is unnecessary to reverse the judgment of that court, because we do not disturb that court's determination that the petition should properly be denied on the merits.

## I

In 1976, petitioner Orlando Roberts and an accomplice committed a home invasion robbery in which they shot two elderly victims, one fatally. In Los Angeles County Superior Court, a jury convicted petitioner of first degree murder (Pen. Code, § 187), attempted murder (Pen. Code, §§ 664, 187), and robbery (Pen. Code, § 211), finding true the enhancement allegations that during the commission of the offenses a principal was armed with a firearm (Pen. Code, § 12022, subd. (a)(1)), that petitioner personally used a firearm (Pen. Code, § 12022.5), and that he committed great bodily injury (Pen. Code, § 12022.7).[1]

In February 1977, petitioner was sentenced in the Los Angeles County Superior Court under the indeterminate sentencing law then in effect to life in

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

prison with the possibility of parole, with a minimum period of seven years' incarceration. (Former §§ 190, 1168, 3046, repealed by Stats. 1976, ch. 1139, § 273, p. 5140; see fn. 6, *post.*) In 1978, the Second Appellate District of the Court of Appeal in Los Angeles affirmed the judgment against petitioner, and this court denied his petition for review.

Since that time, on at least eight occasions at regularly scheduled parole consideration hearings, petitioner has sought a parole date from the Board. On each occasion the Board has denied his application, finding petitioner unsuitable for parole primarily because of the nature of the offenses, petitioner's refusal to accept responsibility and insistence that he falsely was implicated in the crimes by his accomplice, and his prior conviction of manslaughter while a juvenile.[2]

In May 1999, petitioner filed in San Diego County Superior Court a petition for writ of habeas corpus alleging that the constitutional proscriptions against ex post facto laws and cruel and unusual punishment entitled him to have his prison term fixed as provided in the indeterminate sentencing scheme in effect at the time of his offenses. The superior court stayed proceedings on the petition while similar litigation was pending before that court in other cases. In April 2002, the court lifted the stay and, in a lengthy order, denied on the merits petitioner's request for relief on habeas corpus. Petitioner filed a "motion for rehearing." The court deemed the motion to be a motion for reconsideration, denied it, and in reliance upon *In re Sena* (2001) 94 Cal.App.4th 836 [115 Cal.Rptr.2d 22] (*Sena*) also directed petitioner to file any additional habeas corpus petitions challenging a determination of his unsuitability for parole in the county in which he had been convicted and sentenced—that is, either in the Los Angeles County Superior Court or the Second Appellate District of the Court of Appeal.

Meanwhile, petitioner had been transferred to Chuckwalla Valley State Prison in Riverside County. In March 2002, the Board conducted a hearing and again found petitioner unsuitable for parole.

In October 2002, petitioner, as directed by the San Diego County Superior Court, filed in Los Angeles—this time in the Second Appellate District of the Court of Appeal—an original habeas corpus petition alleging that he was entitled to have a primary term fixed under the indeterminate sentencing law. The appellate court decided the petition on the merits "to spare petitioner from being bounced back and forth" between the two appellate districts and

---

[2] In October 1998, while incarcerated in San Diego County, petitioner again requested a parole date. Following the denial of his request, petitioner filed a petition for writ of habeas corpus in this court alleging that the Board had a duty to set a parole date. In March 1999, we denied that petition. (*In re Roberts* (Mar. 31, 1999, S073745).)

denied relief on the ground that a primary term could not be fixed prior to a determination that petitioner was suitable for parole. Expressly disagreeing with *Sena, supra,* 94 Cal.App.4th 836, the Court of Appeal also advised that the proper venue for a habeas corpus petition challenging a determination of unsuitability for parole lies in the county and corresponding appellate district in which an inmate was incarcerated at the time of the denial of parole.

Petitioner subsequently filed in this court a petition denominated a petition for writ of habeas corpus, challenging the determinations of the Court of Appeal that he was ineligible to have a primary term fixed prior to a finding of suitability for parole and that he was required to file any petition based upon the denial of parole suitability in the venue in which he was incarcerated. We ordered that petitioner's petition be refiled nunc pro tunc as a petition for review, and thus deemed it timely. We granted review and limited the issue to be briefed and argued to the determination as to which court is the proper venue to adjudicate a petition for writ of habeas corpus challenging the denial of parole.

## II

### A

To provide context for our discussion, we briefly trace the history of the procedural rules governing the choice of an appropriate venue to entertain a petition for writ of habeas corpus. Prior to its revision in 1966, the California Constitution conferred original habeas corpus jurisdiction upon the superior court of the county in which a criminal defendant was incarcerated. (Cal. Const., art. VI, former § 5; *Griggs v. Superior Court* (1976) 16 Cal.3d 341, 344 [128 Cal.Rptr. 223, 546 P.2d 727] (*Griggs*).) Following that revision, the California Constitution extended jurisdiction over original habeas corpus matters to all superior courts in this state. (Cal. Const., art. VI, § 10.) As a result, "there is now no territorial limitation on the power of a superior court to entertain a petition for habeas corpus relief." (*Griggs, supra,* 16 Cal.3d at p. 346, fn. omitted.) Moreover, because article VI, section 10 "grants identical original jurisdiction in habeas corpus proceedings to both the Court of Appeal and the superior court, it follows that the 1966 constitutional revision also grants such state-wide jurisdiction to the Court of Appeal." (*In re Van Heflin* (1976) 58 Cal.App.3d 131, 135 [128 Cal.Rptr. 257], fn. omitted; see 6 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Writs, § 12, p. 531.)

In the wake of the constitutional amendment, this court issued several decisions providing "rules of judicial procedure to be followed by [the] superior courts in the exercise of [their] unlimited jurisdiction." (*Griggs,*

*supra*, 16 Cal.3d at p. 347.) The applicable procedure generally has depended upon the *nature* of the relief sought in the petition. (See, e.g., *In re Crow* (1971) 4 Cal.3d 613, 624 [94 Cal.Rptr. 254, 483 P.2d 1206] [a petition for writ of habeas corpus challenging the validity of a prior conviction must be filed initially in a court within the county of confinement and, if alleged facts establish a prima facie case, "the superior court in the county of confinement should then transfer the case to the court which imposed the sentence"]; *In re Haro* (1971) 71 Cal.2d 1021, 1024–1026 [80 Cal.Rptr. 588, 458 P.2d 500], & fn. 1 [following determination of a prima facie case, a petition challenging the validity of a prior conviction should be transferred to the sentencing court]; *In re Caffey* (1968) 68 Cal.2d 762, 765, fn. 3 [69 Cal.Rptr. 93, 441 P.2d 933] [same]; cf. *In re Cortez* (1971) 6 Cal.3d 78, 88–89, fn. 9 [98 Cal.Rptr. 307, 490 P.2d 819] [a petition filed in the county of confinement challenging the constitutional validity of a statute requiring prosecution approval for dismissal of a prior conviction should be transferred to the sentencing court *prior to* determination whether there is a prima facie case]; *In re Montgomery* (1970) 2 Cal.3d 863, 868–869, fn. 4 [87 Cal.Rptr. 695, 471 P.2d 15] [a petition challenging the validity of a conviction based upon a retroactive decision of the United States Supreme Court should be transferred to a court in the county of conviction, if that county is not the one in which the petition was filed].)

In *Griggs*, we provided additional guidance for courts in making the determination of which court should exercise its jurisdiction to hear and decide a habeas corpus petition. We also confirmed the continuing validity of the procedural rules developed in the preceding cases, while at the same time disavowing as dicta any language in those decisions implying "a continuing territorial limitation on habeas corpus jurisdiction." (*Griggs, supra*, 16 Cal.3d at pp. 345–347.)

■ Cautioning that the constitutional expansion of jurisdiction to consider the issuance of writs of habeas corpus did not signify that a superior court should give such consideration in every instance, we directed in *Griggs* that, in general, when a petitioner has complied with pertinent rules, the superior court in which the petition is presented should file and review the allegations of the petition in order to determine whether it states a prima facie case for relief. (*Griggs, supra*, 16 Cal.3d at p. 347.) We explained that if the petition states a prima facie case, the superior court must determine whether to hear the matter on the merits. (*Ibid.*) "If the challenge is to *a particular judgment or sentence*, the petition should be transferred to the court which rendered judgment if that court is a different court from the court wherein the petition was filed . . . ." (*Ibid.*, italics added; see Cal. Rules of Court, rule 4.552 (b)(2)(A).) "If the challenge is to *conditions of the inmate's confinement*, then the petition should be transferred to the superior court of the

county wherein the inmate is confined if that court is a different court from the court wherein the petition was filed." (*Griggs, supra,* 16 Cal.3d at p. 347, italics added; see Cal. Rules of Court, rule 4.552 (b)(2)(B).)[3]

In *Griggs,* we did not have occasion to define either of the above italicized phrases. We did not "attempt . . . to state a general rule or all-inclusive specific rules which direct the proper procedural disposition in each instance," and acknowledged that certain types of petitions do not fall within either of the described categories. (*Griggs, supra,* 16 Cal.3d at p. 347.) We advised that "unless there is substantial reason for transferring a petition it should be entertained and resolved in the court where filed." (*Ibid.*) In applying those standards, we held that a habeas corpus petition—claiming that the Department of Corrections' error in noting a prior conviction in its records prevented the petitioner's assignment to work camp—could be resolved as efficiently by the court in the county where the petitioner was incarcerated as by any other court. (*Ibid.*)

## B

■ Among other functions, petitions for writ of habeas corpus traditionally have afforded the means to challenge determinations of unsuitability for parole or denials of parole. (*In re Streeter* (1967) 66 Cal.2d 47, 49 [56 Cal.Rptr. 824, 423 P.2d 976]; see *In re Rosenkrantz* (2002) 29 Cal.4th 616, 658 [128 Cal.Rptr.2d 104, 59 P.3d 174] (*Rosenkrantz*); 6 Witkin & Epstein, Cal. Criminal Law, *supra,* Criminal Writs, § 54, p. 585.) In applying the rules enunciated in *Griggs* for habeas corpus petitions generally to petitions that challenge parole-related determinations, the parties in the present case place

---

[3] California Rules of Court, rule 4.552, which became effective January 2, 2002, provides for the transfer of habeas corpus petitions to the proper superior court to hear the petition. The rule provides in relevant part: "(a) Except as set forth in subdivision (b)(2), the petition must be heard and resolved in the court in which it is filed. [¶] (b)(1) The superior court in which the petition is filed must determine, based on the allegations of the petition, whether the matter should be heard by it or in the superior court of another county. [¶] (2) If the superior court in which the petition is filed determines that the matter may be more properly heard by the superior court of another county, it may nonetheless retain jurisdiction in the matter or, without first determining whether a prima facie case for relief exists, order the matter transferred to the other county. Transfer may be ordered in the following circumstances: [¶] (A) If the petition challenges the terms of a judgment, the matter may be transferred to the county in which judgment was rendered. [¶] (B) If the petition challenges the conditions of an inmate's confinement, it may be transferred to the county in which the petitioner is confined. A change in the institution of confinement that effects a change in the conditions of confinement may constitute good cause to deny the petition. [¶] (3) The transferring court must specify in the order of transfer the reason for the transfer. [¶] (4) If the receiving court determines that the reason for transfer is inapplicable, the receiving court must, within 30 days of receipt of the case, order the case returned to the transferring court. The transferring court must retain and resolve the matter as provided by these rules."

very different emphasis upon particular aspects of our opinion. Therefore, as an initial matter, we consider which aspect of the guidance we provided in *Griggs* is most relevant in deciding which is the proper court to resolve a habeas corpus petition challenging an adverse determination regarding parole.

For his part, petitioner emphasizes our admonition in *Griggs* that a substantial reason should exist for the court in which a habeas corpus petition initially is filed to transfer the petition to another court for hearing and disposition. Petitioner asserts that the court in which the petition is filed should determine, based upon the facts of the specific case, whether to transfer the petition to another court. For example, a petition that presents a "major issue" related to an offense committed in a county other than the county in which the petition is filed properly would be transferred to a court in the former county.

The Attorney General, on the other hand, emphasizes that in *Griggs* we discussed two types of challenges made in habeas corpus petitions— challenges to the judgment or sentence, and challenges to the conditions of confinement. Citing considerations of judicial economy and efficiency, the Attorney General requests that we determine whether petitioner's challenge to the Board's finding that he is unsuitable for parole is analogous to a challenge to the judgment or sentence, or instead to a challenge to the conditions of confinement; thus we are asked to decide which court—the tribunal located in the county of sentencing or the one located in the county of incarceration— properly should decide such a petition. The Attorney General agrees with the Court of Appeal that petitioner's challenge to the finding of parole unsuitability more nearly corresponds to a challenge to the conditions of confinement, and that the court in the county of confinement therefore should have resolved the petition.

As we stated in *Griggs*, generally speaking a petition for writ of habeas corpus should not be transferred to another court unless a substantial reason exists for such transfer. In general, a habeas corpus petition should be heard and resolved by the court in which the petition is filed.

Nonetheless, we observe, as the Attorney General has pointed out, that the volume of parole hearings and consequently the volume of habeas corpus petitions seeking relief from unfavorable determinations related to parole, has expanded greatly in recent years and undoubtedly will continue to increase in view of enactments such as the "Three Strikes" law.[4] Moreover, as discussed

---

[4] For example, according to the Board's Web site, in 1998 a total of 2,191 parole hearings were held for persons who received sentences of life in prison. (Bd., Caseload Statistics, Lifer Hearing <http:///www.bpt.ca.gov/caseload ___ Stats. asp> [as of July 21, 2005].) In 2003, a total of 4,498 parole hearings were held for life-term prisoners. (*Ibid.*)

below, it appears that recently the courts have engaged in, as one court termed it, a "tennis match" with respect to the decision to transfer parole-related habeas corpus petitions—a circumstance suggesting that application of a case-by-case standard to this endeavor would perpetuate existing procedural impediments to the timely resolution of these petitions. We therefore believe that considerations of judicial economy and efficiency weigh against a case-by-case approach and in favor of our making the determination which venue is proper in all such cases.

Accordingly, we begin by examining which of two categories identified in *Griggs*—a challenge to a petitioner's judgment or sentence, or a challenge to the conditions of his or her confinement—more nearly comprises or corresponds to a habeas corpus petition challenging the denial of a parole date, and thus which court—that located in the county of sentencing or that in the county of incarceration—properly should hear and decide such a petition.

The Courts of Appeal whose divergence of opinion attracted our review have discussed the two categories identified in *Griggs*. In *Sena, supra,* 94 Cal.App.4th 836, the petitioner was convicted and sentenced to a prison term of 15 years to life in Los Angeles County and thereafter was incarcerated in San Luis Obispo County. After the Board denied his request for a parole date, the petitioner challenged the denial by filing a petition for writ of habeas corpus in the Superior Court of Los Angeles County. That court transferred the matter to the Superior Court of San Luis Obispo County. After another round of transfers between the courts in San Luis Obispo County and Los Angeles County, the Court of Appeal issued an order to show cause "to . . . stop this tennis match." (*Id.* at p. 838.)

In *Sena,* the Court of Appeal held that the Board's decision denying parole involved the underlying sentence rather than the conditions of confinement, and that consequently the sentencing court in Los Angeles County should hear and determine the habeas corpus petition. (*Sena, supra,* 94 Cal.App.4th at pp. 838–840.) The appellate court held, in the alternative, that the petition did not disclose any " 'substantial' reason" for transfer from the court in which it initially was received, because the petitioner merely alleged that the prison term he already had served was sufficiently lengthy for a second degree murder conviction and that he was rehabilitated. (*Id.* at p. 840.)

 The court in *Sena* reasoned that a parole decision is related to the sentence imposed, because " 'parole eligibility is considered an integral part of any sentence [citation]. [Citations].' A petition for a writ of habeas corpus attacking parole denial is a challenge to the length of sentence, i.e., the sentence itself. It should be heard in the court which 'rendered judgment.' [Citation. ]" (*Sena, supra,* 94 Cal.App.4th at p. 839.) The court also observed

that petitions raising similar claims had been held to challenge the underlying sentences and to be subject to adjudication in the sentencing court. (*Id.* at p. 839, citing *In re Oluwa* (1989) 207 Cal.App.3d 439, 443–444 [255 Cal.Rptr. 35] [entitlement to custody credits]; *In re Van Heflin, supra,* 58 Cal.App.3d at pp. 133–136 [erroneous inclusion of a prior felony conviction in the abstract of judgment].)

The Court of Appeal in the present case viewed the matter very differently. It found that the Board's determination of unsuitability for parole was unrelated to the validity of the underlying sentence, but rather was "prison based" because it concerned the prisoner's continued incarceration, was made by a panel of the Board at the site of the prisoner's confinement, and was based upon the prisoner's "offenses, criminal record, prison conduct and readiness for parole, and potential danger to the community if released."

The present Court of Appeal concluded that therefore, the Board's denial of parole suitability falls within a broad category—distinct from either of the two categories described in *Griggs, supra,* 16 Cal.3d 341 and instead identified in California Standards of Judicial Administration, former section 6.5, which provided that an appellate court ordinarily should deny, without prejudice, a petition for a writ of habeas corpus based primarily upon facts occurring outside that appellate district, including petitions that question "the conditions of confinement or *the conduct of correctional officials.*" (Italics added.)[5] The appellate court concluded that because the Board's conduct in denying parole constituted conduct of correctional officials identified with petitioner's incarceration, a habeas corpus petition challenging the denial of parole suitability should be filed and adjudicated in a court in the county or corresponding appellate district where that official conduct primarily occurred—in petitioner's case, the Fourth Appellate District, where he then was incarcerated.

■ Having considered the opposing views of these Courts of Appeal, we agree with the court in *Sena* that a challenge to the Board's denial of suitability for parole should be adjudicated by a court in the county in which the petitioner was convicted and sentenced. As we shall explain, in making a parole-related determination the conduct of the Board is not the equivalent of conduct of individual correctional officials. In procedural and substantive terms, this type of determination is more analogous to the sentencing

---

[5] California Standards of Judicial Administration, former section 6.5, adopted in 1985 and repealed effective January 1, 2005, stated: "A Court of Appeal should ordinarily deny, without prejudice, a petition for a writ of habeas corpus that is based primarily on facts occurring outside the appellate district. These include petitions that question (1) the validity of judgments or orders of trial courts located outside the appellate district, and (2) conditions of confinement or the conduct of correctional officials outside the appellate district." (See now Cal. Rules of Court, rule 60(e).)

determination made by the court in the county where the judgment was rendered than it is to a decision affecting confinement. As a practical matter, the Board's parole determination is as readily reviewable by a court located in the county where the prisoner was sentenced as it is by a court located in the county where the prisoner is incarcerated, and significantly the Board's determination is more appropriately reviewed by a court located in the county where he or she was sentenced. Finally, important considerations of public policy support this conclusion.

■ In order to understand the nature of the Board's determination with respect to the matter of parole, we first consider the character of that agency. The executive branch has "inherent and primary authority" over parole matters. (*Rosenkrantz, supra*, 29 Cal.4th at p. 667.) Within that branch, the Board is an "executive parole agency" that is an "arm of the Department of Corrections." (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1078 [23 Cal.Rptr.3d 417, 104 P.3d 783] (*Dannenberg*); *Rosenkrantz, supra*, 29 Cal.4th at p. 665.)[6] The Board has limited authority over the duration of a prisoner's confinement, whereas authority over the conditions of confinement is reposed in the Department of Corrections.[7]

---

[6] The former indeterminate sentencing law (ISL) established an "administrative framework for term-fixing and parole-granting" by creating the Adult Authority, an administrative agency within the Department of Corrections. (*In re Rodriguez* (1975) 14 Cal.3d 639, 644 [122 Cal.Rptr. 552, 537 P.2d 384]; *People v. Wingo* (1975) 14 Cal.3d 169, 174 [121 Cal.Rptr. 97, 534 P.2d 1001]; former §§ 5001, 5075–5082; see *Dannenberg, supra*, 34 Cal.4th at pp. 1077–1078.) The Adult Authority made the determination of suitability for parole, as well as (pursuant to statutory guidelines) the actual length of the term a defendant was required to serve. (Former §§ 3020, 3040; *Dannenberg, supra*, 34 Cal.4th at pp. 1077–1078; *People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441]; *In re Rogers* (1980) 28 Cal.3d 429, 434–435 [169 Cal.Rptr. 222, 619 P.2d 415].)

On July 1, 1977, the ISL was repealed and the Uniform Determinate Sentencing Act of 1976 (DSL) became effective. (Stats. 1976, ch. 1139, § 273, p. 5140; see generally *Dannenberg, supra*, 34 Cal.4th at pp. 1077–1078.) The Adult Authority was abolished and replaced by the Board. (§ 5078.) In *In re Stanworth* (1982) 33 Cal.3d 176, 181–188 [187 Cal.Rptr. 783, 654 P.2d 1311], we held that a life prisoner sentenced under the ISL and determined to be suitable for parole following enactment of the DSL was entitled to the benefit both of pre-DSL and post-DSL guidelines in the determination of a parole date. Petitioner never has been determined to be suitable for parole.

[7] The Board's discretion under the DSL has been narrowed from that of its predecessor, but it remains broad. (See *Dannenberg, supra*, 34 Cal.4th at pp. 1078–1080; *In re Stanworth, supra*, 33 Cal.3d at pp. 182–185.) The Board decides the actual confinement periods of life-term inmates within a statutory range. (*Dannenberg, supra*, 34 Cal.4th at p. 1078; see § 3040.) The Board may not, by denying parole, retain a prisoner sentenced to a life-maximum term for a period grossly disproportionate to the offense in violation of the state Constitution's prohibition against cruel or unusual punishment. (*Dannenberg, supra*, 34 Cal.4th at p. 1096; see *In re Rodriguez, supra*, 14 Cal.3d at pp. 651, 656.)

■ The Board's status as an arm of the state's correctional entity does not convert the parole decisions of the Board into the decisions of correctional officials. The Board is a distinct entity, and the commissioners of the Board, who are authorized to conduct hearings and perform other duties related to parole matters, are not correctional officials. (See, e.g., §§ 5075 [appointment and composition of the Board], 5076.1 [conduct of meetings and employment of deputies], 5076.3 [authority of the Board Chairman as head of a department to issue subpoenas], and 5080 [authority to request transfer of prisoners by the Department of Corrections].)

It is the Attorney General's view, shared by amicus curiae Los Angeles County Superior Court, that because the Board is an executive agency rather than a judicial entity, the Board's function is not comparable to that of a sentencing court and its parole determination is unrelated to a sentencing decision of the "court of commitment." In this view, a challenge to the Board's parole determination, therefore, is not a matter for review by that court.

As we noted at the outset, under the state Constitution the superior court of any county, including the county of commitment, has jurisdiction to review a habeas corpus petition challenging the Board's parole determination. Because there is no question that the court has jurisdiction to review the Board's denial of parole suitability, and we merely decide here the appropriate venue in which to adjudicate a challenge to that denial, the Board's status as an executive agency rather than a judicial entity does not preclude our consideration of any features shared in common by a parole determination and a sentencing decision that favor review by the sentencing court.

Amicus curiae Los Angeles County Superior Court also asserts that sentencing and parole are distinct and unrelated phases in the convicted person's affiliation with the correctional system, and that therefore a court in the county where the petitioner is sentenced is in no better position than a court in the county where the petitioner is incarcerated to decide claims related to parole.

■ It is apparent that a term of imprisonment and the onset of parole are distinct phases under the legislative scheme. (§ 3000; *Community Release Bd. v. Superior Court* (1979) 91 Cal.App.3d 814, 817 [154 Cal.Rptr. 383].) As amicus curiae observes, the general objectives of sentencing include protecting society, punishing offenders, deterring future crimes, and treating with uniformity those committing the same types of offenses (§ 1170, subd. (a)(1); Cal. Rules of Court, rule 4.410; 3 Witkin & Epstein, Cal. Criminal Law, *supra*, Punishment, § 251, p. 334), whereas the objective of parole is, through the provision of supervision and counseling, to assist in the

parolee's transition from imprisonment to discharge and reintegration into society. (§ 3000, subd. (a)(1).)

Generally speaking, however, a sentence contemplates a period of parole, which in that respect is related to the sentence. (See §§ 1168, subd. (b) [the trial court shall not fix the term or duration of the sentence of life imprisonment], 3000, subd. (a)(1) [the sentence pursuant to § 1168 "shall include a period of parole, unless waived"], 3000.1, subd. (a) [an inmate sentenced pursuant to § 1168 to a maximum of life imprisonment for murder shall remain on parole for life].) In addition, the objectives of sentencing and parole are related; in essence, sentencing—by punitive incarceration—achieves mandatory separation of the offender from society. At the conclusion of that phase, parole assists in returning the prisoner to society while simultaneously affording some measure of continuing protection to society.

The Attorney General and amicus curiae Los Angeles County Superior Court also suggest that other features of the Board's parole determination, including its timing and the factors it takes into account, establish that a prisoner's challenge to a parole determination is more analogous to his or her challenge to the conditions of confinement. We recognize that a challenge to an adverse determination regarding parole, in common with a challenge to the conditions of confinement, seeks review of the conduct of officials that occurs *during* the petitioner's confinement. Unlike a challenge to the conditions of confinement, however, a challenge to official conduct in denying parole suitability seeks review of a determination based upon evidence that is not related solely to the period or circumstances of confinement, but also to the petitioner's behavior prior to confinement as well as to his or her likely behavior following confinement.[8]

The particular factors employed in the Board's evaluation of parole suitability do not dictate or suggest the appropriate venue for judicial review of the Board's decision. That is because, as we recognized in *Rosenkrantz*, the court's review of the Board's decision is circumscribed. The court is authorized to review the factual basis of a decision by the Board denying parole "to ensure that the decision comports with the requirements of due process of law, but . . . in conducting such a review, the court may inquire

---

[8] The parties and amici curiae labor to characterize the Board's parole decision as relating primarily either to the circumstances of the prisoner's offense or the circumstances of confinement. In fact, the Board reviews the offense committed, the judgment or sentence, the prisoner's prior history of offenses, the prisoner's conduct during the period of confinement, and his or her potential future conduct. (§ 3041, subd. (b); Cal. Code Regs., tit. 15, §§ 2281–2284, 2402, subds. (c), (d); see *Dannenberg, supra,* 34 Cal.4th at pp. 1078–1079, 1093–1095; *Rosenkrantz, supra,* 29 Cal.4th at pp. 654, 679–683; cf., *In re Van Heflin, supra,* 58 Cal.App.3d at pp. 136–137 [evidence of *conditions* of confinement generally is not germane at a parole hearing].)

only whether some evidence in the record before the Board supports the decision to deny parole, based upon the factors specified by statute and regulation." (*Rosenkrantz, supra,* 29 Cal.4th at p. 658; *In re Powell* (1988) 45 Cal.3d 894, 901–902 [248 Cal.Rptr. 431, 755 P.2d 881].) Thus, a challenge to the Board's determination may be reviewed as readily by a court in the county of commitment as by a court in the county of confinement.

Other practical considerations, however, indicate that the court in the county of commitment is more suited to review the Board's parole determination. Assigning the task of adjudicating habeas corpus petitions that challenge adverse parole determinations to the court in the county of commitment will have the beneficial effect of producing consistent review of such claims by one court, instead of review by a multitude of courts as the petitioner is relocated from one prison to another within the state. In addition, it is likely that the prisoner under consideration by the Board will return to and have ties to the county in which he or she formerly resided at the time of the offenses that resulted in the commitment. We agree with amici curiae San Luis Obispo County Superior Court et alia that assigning venue to the court of commitment serves the goal of locating the review of parole decisions where the release of the prisoner is most likely to have an impact upon the community. The local prosecutor and persons representing the victims often are the sole witnesses at the Board hearing, and they, along with persons interested in the prisoner's welfare, may have the greatest interest in any court proceeding that reviews the Board's determinations, as well as the greatest need to have that proceeding conducted in a venue that does not require extensive travel.

Finally, important considerations of public policy support our conclusion. Within this state, certain counties—small in population and contributing a minute percentage of the felony convictions that occur statewide, but having large or numerous facilities for the incarceration of criminal defendants— process a disproportionate number of petitions for writ of habeas corpus relative to their population and their number of felony commitments. In certain instances, the number of petitions filed in a small county is so large that a substantial portion of those petitions must be redirected for processing to neighboring sparsely populated counties, with an attendant adverse impact upon the resources of the affected counties.

By contrast, certain other counties—large in population and in their number of felony convictions, but having comparatively few (or no) prison facilities—resolve a fraction of the habeas corpus petitions filed statewide by inmates in state custody that is small in relation to their share of the state's population and total felony convictions. Thus, such counties do not share

proportionately in expending the court resources required to adjudicate these petitions.[9]

By tradition, the superior courts that are located in counties having significant percentages of prisoners serving life sentences frequently have adjudicated habeas corpus petitions challenging the denial of parole and, as a consequence, have developed concomitant expertise in that area of the law. Nonetheless, the historical delegation of that function has imposed an onerous workload upon the superior courts in sparsely populated counties having far fewer judges and other personnel and resources than are available in more populous counties—a circumstance that likely has motivated such courts in the past to transfer such habeas corpus petitions elsewhere.

---

[9] For example, during the state fiscal year 2002–2003, Kings County's share (773) of felony convictions statewide (120,011) was substantially less than 1 percent. Kings County is the site of three large prison facilities: California State Prison, Corcoran; California Substance Abuse Treatment Facility and State Prison, Corcoran; and Avenal State Prison. During that fiscal year, 415 criminal petitions for writ of habeas corpus were filed by inmates in state custody in Kings County. (Judicial Council of Cal., 2004 Court Statistics Rep., State Caseload Trends, table 8b, Felonies—Filings and Dispositions by Outcome and County, Fiscal Year 2002–2003, p. 55.2; *id.*, table 11f, Habeas Corpus—Criminal and "Other" Filings & Dispositions by County, Fiscal Year 2002–2003, p. 58.6, online at <http://www.court.info.ca.gov/reference/documents/csr2004.pdf> [as of July 21, 2005].) As of June 30, 2003, the end of fiscal year 2002–2003, there were 18,384 felony prisoners in Kings County. (See Cal. Dept. Corrections, Monthly Rep. of Population (July 3, 2003) p. 2, online at <http://www.corr.ca.gov/OffenderInfoServices/Reports/Monthly/TPOP1A/TPOP1Ad0306.pdf> [as of July 21, 2005].) The number of judicial positions authorized for Kings County is seven (Gov. Code, § 69585.5.) As of June 30, 2003, the ratio of superior court judges to felony prisoners in that county was one judge for every 2,626 inmates.

By contrast, during the fiscal year 2002–2003, Los Angeles County's share (29,881) of felony convictions statewide (120,011) was 25 percent. Los Angeles County has one major state prison facility within its county limits: California State Prison, Lancaster. During that fiscal year, 408 criminal petitions for writs of habeas corpus were filed by inmates in state custody in Los Angeles County. (Judicial Council of Cal., 2004 Court Statistics Rep., State Caseload Trends, table 8b, Felonies—Filings and Dispositions by Outcome and County, Fiscal Year 2002–2003, p. 55.2; *id.*, table 11f, Habeas Corpus—Criminal and "Other" Filings & Dispositions by County, Fiscal Year 2002–2003, p. 58.6, online at <http://www.courtinfo.ca.gov/reference/documents/csr2004.pdf> [as of June 21, 2005].) As of June 30, 2003, there were 4,281 felony prisoners in Los Angeles County. (Cal. Dept. Corrections, Monthly Report of Population, *supra*, p. 2, online at <http://www.corr.ca.gov/OffenderInfoServices/Reports/Monthly/TPOP1A/TPOP1Ad0306.pdf> [as of July 21, 2005].) The number of judicial positions authorized for Los Angeles County is 429 (Gov. Code, § 69586.) As of June 30, 2003, the ratio of superior court judges to felony prisoners in that county was one judge for every 10 inmates.

Statistics available from the Department of Corrections reflect that as of June 30, 2003, there were 18,707 inmates with life sentences (and 2,974 inmates with life without possibility of parole sentences) in California, but do not set forth the number of such inmates by county. (Cal. Dept. Corrections, Prison Census Data, table 10, online at <http://www.corr.ca.gov/OffenderInfoServices/Reports/Ann ual/Census/CENSUSd0306.pdf> [as of July 21, 2005].)

As a result, a petitioner may be subjected to significant delays in obtaining resolution of his or her claims during the time the petition makes the rounds of several courts. In addition, the process is likely to foster discord between the superior courts in sparsely populated rural counties (where prisons predominantly are located) and the superior courts in urban counties with large populations (where trials and sentencing proceedings are largely conducted and from which the bulk of felony commitments ensue).

We properly consider all of these circumstances in establishing a procedural rule intended to more equitably and efficiently deal with this situation. As we explained in *Griggs*, this court has inherent authority to establish "rules of judicial procedure to be followed by superior courts" in exercising their territorially unlimited jurisdiction over habeas corpus petitions. (*Griggs, supra,* 16 Cal.3d at p. 347; see also *People v. Pena* (2004) 32 Cal.4th 389, 398–399, 403 [9 Cal.Rptr.3d 107, 83 P.3d 506] [in the exercise of supervisory power over state courts, directing the Court of Appeal to refrain from utilizing an oral argument waiver notice]; *People v. Burgener* (2003) 29 Cal.4th 833, 861 [129 Cal.Rptr.2d 747, 62 P.3d 1] [in the exercise of supervisory power over state criminal procedure, prohibiting trial courts from making race-conscious assignments of prospective jurors]; *People v. Engelman* (2002) 28 Cal.4th 436, 449 [121 Cal.Rptr.2d 862, 49 P.3d 209] [in the exercise of supervisory power over the courts, directing trial courts to refrain from instructing juries pursuant to CALJIC No. 17.41.1 on the obligation of jurors to advise the court of certain juror conduct].)

In light of the foregoing considerations, we direct that a petitioner who seeks to challenge by means of habeas corpus the denial of parole (or his or her suitability for parole) should file the petition in the superior court located in the county in which the conviction and sentence arose, and that the petition should be adjudicated in that venue. We also direct that when a habeas corpus petition challenging the denial of parole or suitability for parole is filed in the superior court in a county other than that in which the petitioner's conviction and sentence were imposed, the filing court should transfer the petition to the superior court in the county of commitment in the first instance, prior to any determination being made that the petitioner has made a prima facie case. This practice is equitable and will serve to redress the disparity in the relative burdens imposed upon the resources of the various courts by this category of habeas corpus petition.

Based upon similar considerations, and again in the exercise of our inherent authority to establish rules of judicial procedure, we also direct that, among the three levels of state courts, a habeas corpus petition challenging a decision of the parole board should be filed in the superior court, which should entertain in the first instance the petition. (Accord, *In re Steele* (2004)

32 Cal.4th 682, 688, 692 [10 Cal.Rptr.3d 536, 85 P.3d 444] [directing that in general, a section 1054.9 discovery motion related to a petition for writ of habeas corpus challenging a judgment of death or life without possibility of parole first should be made in the trial court that rendered the judgment]; *Roma Macaroni Factory v. Giambastiani* (1933) 219 Cal. 435, 436–438 [27 P.2d 371] [directing that applications for writ of mandate ordinarily "should first be made to the superior court"].)

### III

Because we have disagreed with the Court of Appeal solely with respect to its determination that the proper venue for the petition for writ of habeas corpus challenging the determination that petitioner is unsuitable for parole lies in the county and corresponding appellate district in which petitioner is incarcerated, and we do not disturb the Court of Appeal's decision that petitioner is ineligible to have a primary term fixed prior to a finding of suitability for parole, we affirm the judgment of the Court of Appeal denying the petition for writ of habeas corpus.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

On August 24, 2005, the opinion was modified to read as printed above.