Filed 4/1/21

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re TYRONE A. DOUGLAS | C091545 |
| on Habeas Corpus. | (Super. Ct. Nos. 13F00422, 12F01245) |

ORIGINAL PROCEEDING. Petition for writ of habeas corpus. Petition denied.

Michael Satris and Randy Kravis, under appointment by the Court of Appeal, for Petitioner.

Matthew Rodriguez, Chief Deputy and Acting Attorney General, Phillip J. Lindsay, Senior Assistant Attorney General, Julie A. Malone, Supervising Deputy Attorney General and Krista L. Pollard, Deputy Attorney General, for Respondent.

Tyrone A. Douglas was convicted of two nonviolent felonies and a violent felony. The trial court chose one of the nonviolent felonies as the primary offense, imposed sentence for that offense, imposed but stayed sentence on the other nonviolent felony offense, and imposed a consecutive term for the violent felony. After Douglas's sentencing, the voters passed Proposition 57, the Public Safety and Rehabilitation Act of 2016, which added section 32 to article I of the California Constitution. As relevant here,

1

section 32 provides: "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term of his or her primary offense." (Cal. Const., art. I, § 32, subd. (a)(1) (hereafter, section 32(a)(1)).) For simplicity, the phrase "parole consideration after completing the full term on the primary offense" will be referenced in this opinion as "early parole consideration."

Douglas filed a petition for writ of habeas corpus challenging a regulation adopted by the California Department of Corrections and Rehabilitation (CDCR) that limited the parole-consideration benefit of section 32(a)(1) to inmates who were convicted *only* of nonviolent felonies, thus excluding from early parole consideration anyone convicted of one or more violent felonies plus one or more nonviolent felonies, so-called "mixed-offense inmates." (See Cal. Code Regs., tit. 15, § 3490, subd. (a)(5) [excluding violent offenders from nonviolent offender parole consideration].) In support of his challenge to the CDCR regulation, Douglas cited *In re Mohammad* (2019) 42 Cal.App.5th 719, review granted February 19, 2020, S259999 (*Mohammad*), which held that because the unambiguous text of section 32(a)(1) provides for early parole consideration for inmates convicted of nonviolent felony offenses, regardless of whether they were also convicted of a violent offense, a mixed-offense inmate is eligible for early parole consideration under section 32(a)(1). (*Mohammad*, at p. 726.)

Although the language of section 32(a)(1) supports an interpretation that mixed-offense inmates are entitled to early parole consideration, such an interpretation would lead to absurd results the voters did not intend. Accordingly, we conclude that a person convicted of a violent felony offense and sentenced to state prison is ineligible for early parole consideration under section 32(a)(1).

We will deny the petition for writ of habeas corpus.

BACKGROUND

Douglas was convicted in Sacramento County Superior Court of three crimes: a criminal threat (Pen. Code, § 422), false imprisonment (Pen. Code, § 236), and domestic battery (Pen. Code, § 273.5, subd. (a)) with an enhancement for inflicting great bodily injury in connection with the domestic battery. (Pen. Code, § 12022.7, subd. (e).) Because Douglas inflicted great bodily injury in committing the domestic battery, the domestic battery was a violent felony under Penal Code section 667.5, subdivision (c)(8), but the other offenses were nonviolent. The criminal threat and false imprisonment charges were brought in one case (Sacramento Superior Court, case No. 13F00422) and the domestic battery charge was brought in another case (Sacramento Superior Court, case No. 12F01245). The two cases were joined for purposes of judgment and sentencing.

After the trial court imposed judgment and sentencing, Douglas appealed, and this court modified the judgment and remanded for resentencing. (*People v. Douglas* (C076525, Dec. 18, 2017) [nonpub. opn.].) At resentencing, the trial court chose the criminal threat as the primary offense, imposing a term of six years (the upper term of three years, doubled to six years under the three strikes law). In addition, the trial court imposed but stayed a term for the false imprisonment offense and imposed a consecutive term (one-third the middle term) of one year for the domestic battery. The trial court also imposed a consecutive term of one year eight months for the infliction of great bodily injury and five years for a prior serious felony conviction, resulting in a total term of 13 years eight months in state prison.

Douglas engaged CDCR's administrative process, asserting he is eligible for early parole consideration under section 32(a)(1). CDCR determined that Douglas is not eligible for early parole consideration under section 32(a)(1) because he is a violent offender. Douglas filed petitions for writs of habeas corpus in Marin County Superior Court, which denied the petition, and in the Court of Appeal, First Appellate District,

3

Division One, which denied the petition without prejudice to filing a new petition for writ of habeas corpus in this court, citing authority that the proper venue for filing a petition for writ of habeas corpus with respect to denial of or suitability for parole is where judgment and sentence were imposed. (See *In re Roberts* (2005) 36 Cal.4th 575, 593.)

Douglas filed a petition for writ of habeas corpus in this court and we issued an order to show case.

DISCUSSION

A

"The general principles that govern interpretation of a statute enacted by the Legislature apply also to an initiative measure enacted by the voters. [Citation.] Thus, our primary task here is to ascertain the intent of the electorate [citation] so as to effectuate that intent [citation].

"We look first to the words of the initiative measure, as they generally provide the most reliable indicator of the voters' intent. [Citations.] Usually, there is no need to construe a provision's words when they are clear and unambiguous and thus not reasonably susceptible of more than one meaning. [Citations.] . . .

"A literal construction of an enactment, however, will not control when such a construction would frustrate the manifest purpose of the enactment as a whole. [Citations.] 'The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' [Citation.] In determining the purpose of an initiative measure, we consider the analysis and arguments contained in the official election materials submitted to the voters. [Citations.]" (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 978-979 (*Arias*).)

"Courts may, of course, disregard even plain language which leads to absurd results or contravenes clear evidence of a contrary [voter] intent. [Citation.]" (*Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1105, bracketed text added.) Whether a result is absurd, however, depends in large part on what the voters intended. (See also *In re J. W.*

4

(2002) 29 Cal.4th 200, 210 [courts will not give language a literal meaning if doing so would result in absurd consequences that could not have been intended].)

B

Consistent with the foregoing rules of initiative interpretation, we begin our analysis with the relevant initiative language. The words of section 32(a)(1), considered in isolation, support a conclusion that an inmate is eligible for early parole consideration if the inmate was convicted of a nonviolent offense, even if the term for that nonviolent offense was not designated as the primary offense, and even if the inmate was also convicted of one or more violent offenses. Section 32(a)(1) merely says that "[a]ny person convicted of a nonviolent offense and sentenced to state prison shall be eligible for parole consideration after completing the full term of his or her primary offense." The words "primary offense" are defined as "the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence." (Cal. Const., art. I, § 32, subd. (a)(1)(A).) Nothing in section 32(a)(1) says that the primary offense must be nonviolent, or that an inmate is rendered ineligible for early parole consideration if the inmate also has one or more violent felony convictions.

Because the words of section 32(a)(1) support a conclusion that an inmate is eligible for early parole consideration after completing his or her primary offense if the inmate was convicted of a nonviolent offense, even if the term for that nonviolent offense was not designated as the primary offense, and even if the inmate was also convicted of one or more violent offenses, we must interpret it that way unless to do so would lead to absurd results the voters did not intend. As we explain in the remainder of this opinion, such an interpretation would in fact lead to absurd results the voters did not intend.

C

Here is but one example of an absurd result. The literal language of section 32(a)(1) suggests that an inmate convicted of 10 violent felonies and one nonviolent

5

felony would be eligible for early parole consideration after serving the full term of his or her primary offense, whatever that primary offense might be. But an inmate convicted of the same 10 violent felonies without a nonviolent felony conviction would be ineligible for early parole consideration under section 32(a)(1). Such a result would encourage and reward a violent felon's commission of at least one additional nonviolent felony, would be inconsistent with sound public policy, and would make no sense.

In this regard, we disagree with the approach in *Mohammad, supra,* 42 Cal.App.5th 719. In that case, the inmate was convicted of nine violent felonies (all robberies) and six nonviolent felonies (all receiving stolen property). In sentencing the inmate, the trial court chose one of the nonviolent felonies as the principal sentencing term (three years) and ordered that the remaining terms run consecutively, for an aggregate sentence of 29 years. (*Id*. at pp. 722-724.) Applying the text of section 32(a)(1), the Court of Appeal determined the inmate was eligible for early parole consideration after completing the three-year term on the primary offense (receiving stolen property). (*Mohammad,* at pp. 725-726.) The court declined to consider voter intent (*id*. at p. 727) and refused to conclude its interpretation would lead to absurd results, explaining: "The Constitution's text compels the result we reach, and we are not prepared to declare that result so absurd [citation] as to disregard the Constitution's plain meaning . . . ." (*Id*. at p. 728.)

We disagree with the holding in *Mohammad* because the court did not test the initiative language for absurd results the voters did not intend. If the text of the constitutional provision is the measure of whether a result is absurd, then no result based on the text could be absurd, completely negating the benefit of determining whether a literal interpretation of a provision would be contrary to the voters' intent.

But as we have indicated, whether a literal interpretation of a constitutional provision leads to absurd results is based in large part on whether the voters intended the result. To determine whether the voters intended a result, we may consider the normal

6

indicia of the voters' intent beyond the text of the provision. "[W]e consider the analysis and arguments contained in the official election materials submitted to the voters. [Citations.]" (*Arias, supra,* 46 Cal.4th at p. 979.)

The analysis of Proposition 57 by the Legislative Analyst does not address how section 32(a)(1) applies to mixed-offense inmates. Although the Legislative Analyst appears to have equated "[n]onviolent [o]ffenders" with "individuals who are convicted of 'nonviolent felony' offenses" (Ballot Pamp., Gen. Elec. (Nov. 8, 2016) analysis of Prop. 57 by Legislative Analyst, p. 56), it did not acknowledge that an inmate convicted of a nonviolent felony offense might also be convicted of one or more violent felony offenses.

Next, we consider the proponents' argument in support of Proposition 57. The argument began: "California public safety leaders and victims of crime support Proposition 57 -- the Public Safety and Rehabilitation Act of 2016 -- because Prop. 57 focuses resources on keeping dangerous criminals behind bars, while rehabilitating juvenile and adult inmates and saving tens of millions of taxpayer dollars." (Ballot Pamp., Gen. Elec. (Nov. 8, 2016) argument in favor of Prop. 57, p. 58.) This language suggests at least a partial intent to keep dangerous criminals behind bars, a concept reinforced in the proponents' rebuttal to the argument against Proposition 57. The rebuttal asserted that mixed-offense inmates would not be eligible for early parole consideration under section 32(a)(1), stating that Proposition 57 "[d]oes NOT authorize parole for violent offenders." (Ballot Pamp., Gen. Elec. (Nov. 8, 2016) rebuttal to argument against Prop. 57, p. 59.) The rebuttal further asserted: "Violent criminals as defined in Penal Code 667.5(c) are excluded from parole." (*Ibid*.) These arguments indicate that a person convicted of one or more violent felony offenses would not be eligible for early parole consideration, even if the person was also convicted of a nonviolent felony offense.

7

To alleviate any doubt about absurd results based on voter intent, imagine if the proponents had instead argued to the voters that under Proposition 57, violent criminals would be eligible for early parole consideration regardless of how many violent crimes they committed, so long as they also committed at least one additional nonviolent offense. The proponents did not make such an argument to the voters, and for good reason.

Indeed, nothing in the election materials, other than the language of section 32(a)(1), evinces an intent on the part of the voters to extend early parole consideration to persons convicted of violent felony offenses. To the contrary, Proposition 57 was presented to the voters as excluding violent offenders from early parole consideration.

Douglas suggests that if section 32(a)(1) were interpreted to apply only to an inmate whose *primary* offense was a nonviolent felony, it would not lead to absurd results. He claims there is "nothing unreasonable in the electorate's focus on the nonviolent nature of a prisoner's primary offense in fashioning a program for early parole consideration to reduce the prison population." But Douglas's view does not find support in the language of section 32(a)(1) or in the election materials. Section 32(a)(1) does not require the primary offense to be a nonviolent felony conviction. And the election materials indicate that a person with a violent felony conviction is not eligible for early parole consideration. In any event, Douglas's proposed interpretation does not alleviate the concern that a person with many violent felony convictions could be rewarded for committing at least one additional nonviolent felony, as long as the sentencing judge designates the nonviolent felony as the primary offense.

As the court correctly recognized in *Mohammad*, affording a person eligibility for early parole consideration does not necessarily mean that the person will be released early on parole. (*Mohammad, supra,* 42 Cal.App.5th at 728-729.) Additional measures to protect the public would remain in place. Even with such measures, however, we are convinced that a literal interpretation of section 32(a)(1) would lead to absurd results the

8

voters did not intend.  Accordingly, we conclude that a person convicted of a violent felony offense and sentenced to state prison is ineligible for early parole consideration under section 32(a)(1).

DISPOSITION

The petition is denied.


/S/<br>
MAURO, J.

I concur:


/S/<br>
RENNER, J.

9

ROBIE, Acting P. J., Concurring.

I agree with the majority that petitioner is not entitled to relief under article I, section 32, subdivision (a)(1) of the California Constitution.[1] I disagree, however, with the majority's conclusion "that a person convicted of a violent felony offense and sentenced to state prison is ineligible for early parole consideration under section 32(a)(1)." (Maj. opn. at p. 2.) The majority comes to its conclusion upon the theory that the plain language of section 32(a)(1) as interpreted in *In re Mohammad* (2019) 42 Cal.App.5th 719, 727-728, review granted February 19, 2020, S259999, is absurd and the provision must be interpreted in light of the proponent's argument and rebuttal, which assured voters section 32(a)(1) would not apply to violent offenders as defined by section 667.5, subdivision (c). (Maj. opn. at pp. 2, 6, 8.) Although I agree with the majority that the interpretation in *In re Mohammad* leads to absurd results, an interpretation that is not absurd is for the inmate convicted of one violent felony offense -- being served as the primary offense -- and nonviolent felony offenses becoming eligible for early parole consideration after serving his or her sentence for the violent felony offense. I believe section 32(a)(1) allows for early parole consideration under those circumstances. I reach this conclusion by giving "any offense" its plain meaning (i.e., the primary offense can be either violent or nonviolent) and reading "convicted of" in its present tense as meaning the inmate must be serving his or her sentence for a nonviolent felony when he or she seeks parole consideration.

I believe the majority's heavy reliance on the proponent's argument and rebuttal to determine voter intent is misplaced. (See *In re Gadlin* (2020) 10 Cal.5th 915, 940-941 ["The voters were explicitly warned in the margins of the voter guide that 'Arguments

---

[1] I will refer to this section and subdivision of the California Constitution as section 32(a)(1), and the section's other subdivision as section 32(a)(1)(A). All other section references are to the Penal Code.

1

printed on this page are the opinions of the authors, and have not been checked for accuracy by any official agency' "].) Indeed, the other analyses contained in the Voter Information Guide show that the voter's intent is not at all clear. The Attorney General's analysis merely used the language in the proposed initiative and provides no support for the conclusion that inmates convicted of a violent felony are categorically excluded from early parole consideration under section 32(a)(1). The Legislative Analyst broadly discussed criminal sentencing, generally summarized the language in the proposed initiative, and explained the general impact of the initiative. As to the latter, the Legislative Analyst estimated the number of inmates who would be affected by the initiative and stated those inmates would likely serve a year and one-half in prison, instead of the two years served under current law. While this information could hypothetically support the majority's position, the analysis provided no context for the numbers used and failed to disclose or describe the types of sentences at issue. In short, nothing in the Voter Information Guide gives definitive guidance on the issue before this court today.

It is clear section 32(a)(1) is ambiguous given the divergence of appellate opinions as to its meaning; and, the Voter Information Guide provides no answers. "Under these circumstances, lacking definitive guidance in the [initiative's] language or history, 'our aim [must be] to provide . . . a construction [of the initiative] which is faithful to its language, which produces fair and reasonable results in a majority of cases, and which can be readily understood and applied by trial courts.' " (*In re Reeves* (2005) 35 Cal.4th 765, 771.) "[W]e presume the voters relied on the text of the measure" for resolution of any ambiguity in the initiative. (*In re Gadlin*, *supra*, 10 Cal.5th at p. 940.)

Section 32(a)(1)(A) provides: "Parole Consideration: Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense. [¶] (A) For purposes of this section only, the full term for the primary offense means the longest term

2

of imprisonment imposed by the court for *any offense*, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence." (Italics added.)

The plain meaning of "any offense" is "any" and thus a plain interpretation of the statute is that inmates who served the primary offense, whether that be for a violent or nonviolent felony offense, can apply for early parole consideration if the remaining offenses are nonviolent felony offenses. Nothing in the voter information materials, other than the proponent's argument and rebuttal, preclude this plain reading of the initiative. The present tense use of "convicted of" also supports the interpretation that a violent felony conviction for which an inmate already served his or her sentence as the primary offense does not preclude the inmate from receiving the benefit of section 32(a)(1) when his or her remaining sentence is for nonviolent felony offenses only.

The People assert "convicted of" in section 32(a)(1) means the offenses an inmate was convicted of at trial and carries with him or her while serving that inmate's sentence. Indeed, the People claim that because petitioner was convicted of a violent felony offense, he is a violent *offender* for the purposes of section 32(a)(1) and precluded from petitioning for nonviolent offender parole consideration.

Our Supreme Court's analysis and interpretation of section 2933.1, subdivision (a)[2] in *In re Reeves* (2005) 35 Cal.4th 765, is instructive and supports a conclusion that "convicted of" in section 32(a)(1) should be interpreted to refer to the conviction for which an inmate is serving a sentence at the time he or she seeks parole consideration under section 32(a)(1) rather than reading the term to encompass all of the offenses an inmate was convicted of at trial.

Section 2933.1(a) provides: "Notwithstanding any other law, any person who is *convicted of* a felony offense listed in subdivision (c) of Section 667.5 shall accrue no

---

[2]     I will refer to this section as section 2933.1(a).

3

more than 15 percent of worktime credit, as defined in Section 2933." (Italics added.) In *Reeves*, the question before our Supreme Court was "whether section 2933.1(a) restrict[ed] petitioner's ability to earn worktime credit against a concurrent sentence for a nonviolent offense" when "[p]etitioner ha[d] completed a five-year term for the violent offense that made the section applicable and [wa]s [then] serving the remainder of a concurrent 10-year term for a nonviolent offense." (*In re Reeves*, *supra*, 35 Cal.4th at pp. 768-769.) The court held "that section 2933.1(a) limited to 15 percent the rate at which petitioner could earn worktime credit as long as he was serving the term for the violent offense, even though the concurrently punished nonviolent offense would not by itself have caused the section to apply; but once petitioner completed the term for the violent offense he became prospectively eligible to earn credit at a rate unrestricted by the section." (*Reeves*, at p. 769.) Our Supreme Court reasoned that because the Legislature used the term "convicted of" in the present tense, instead of the past perfect tense ("has been convicted" or "previously has been convicted"), it did not intend for an inmate's violent felony offense to constitute a continuing disability for the purposes of worktime credit. (*Id*. at pp.771-772.)

Our Supreme Court first considered how section 2933.1(a) applies in the context of an inmate serving consecutive sentences: "Under the Determinate Sentencing Act (§ 1170 et seq.), multiple consecutive determinate terms must be combined into a single, 'aggregate term of imprisonment for all [such] convictions' [citation] that merges all terms to be served consecutively and complies with the rules for calculating aggregate terms . . . , whether or not the consecutive terms arose from the same or different proceedings (*ibid*.; see also § 669; Cal. Rules of Court, rule 4.452). To suggest that a prisoner serving an aggregate term serves the component terms and enhancements in any particular sequence would be a meaningless abstraction. For this reason, when an aggregate term includes time for a violent offense, at any point during that term the prisoner literally 'is convicted of a [violent] felony offense' (§ 2933.1(a)) and actually is

4

serving time for that offense.  Accordingly, a restriction on credits applicable to 'any person who is convicted of a [violent] felony offense' (*ibid.*) logically applies throughout the aggregate term." (*In re Reeves*, *supra*, 35 Cal.4th at pp. 772-773.)

Thus, our Supreme Court acknowledged that a prisoner sentenced to a consecutive sentence, which included at least one violent felony offense, could earn only 15 percent worktime credit under section 2933.1(a) for the duration of that prisoner's sentence.  Our Supreme Court, however, rejected this same conclusion for prisoners sentenced to concurrent sentences.

"The People's effort to apply the same logic to concurrent terms is not convincing. A court that decides to run terms *consecutively* must create a new, 'aggregate term of imprisonment' (§ 1170.1, subd. (a)) into which all the consecutive terms merge, but no principle of California law merges *concurrent* terms into a single aggregate term.  Section 1170.1, which articulates the statutory mandate and authority for creating aggregate consecutive terms, says nothing about concurrent terms.  Furthermore, a later sentencing court may not change a prior sentencing court's discretionary decision to make a particular term concurrent rather than consecutive.  (Cal. Rules of Court, rule 4.452(3).) The Determinate Sentencing Law, in short, does not support the People's argument that all of an inmate's overlapping terms necessarily constitute a single, unified term of confinement for purposes of worktime credit." (*In re Reeves*, *supra*, 35 Cal.4th at p. 773.)

Our Supreme Court reasoned, "[t]he People's reading of section 2933.1(a) creates tension with the statutory language in this way:  Because petitioner has already served the term for the violent offense that caused the section to apply, the statement that he 'is convicted of a [violent] felony offense' (*ibid.*) is true only as a matter of historical fact, i.e., he was once convicted of a violent offense.  But we have already rejected, as contrary to the Legislature's probable intent, the argument that section 2933.1(a) treats a conviction for a violent offense as a continuing disability that restricts an offender's

5

ability to earn worktime credits even after he has served his sentence for that offense. Except in this inapplicable sense, to say that petitioner at the present time 'is convicted' (*ibid*.) of a violent offense is not correct. Today, his conviction for the violent offense gives the Department [of Corrections and Rehabilitation] no claim to his physical custody; but for the time remaining on the separate, concurrent term for the nonviolent offense, he would be entitled to release. For the same reason, given the statute's ambiguity, the People's interpretation of section 2933.1(a) is not entirely fair (to petitioner or others in his situation) or reasonable." (*In re Reeves*, *supra*, 35 Cal.4th at p. 777.)[3]

Much like the statute in *Reeves*, section 32(a)(1) classifies inmates eligible under its provisions as those presently convicted of a certain type of offense and not as the class of offender they were upon conviction. Thus, like the statute taken up in *Reeves*, there is no indication the electorate intended for an inmate's violent felony conviction to constitute a continuing disability. (See *In re Reeves*, *supra*, 35 Cal.4th at pp.771-772.) Moreover, section 32(a)(1)(A)'s definition of "primary offense" as "any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence" requires us to break an inmate's sentence into its component parts for the purpose of determining whether that inmate has served his or her primary offense, making the particular sequence in which an inmate serves his or her violent felony offense a meaningful abstraction.

Here, after serving his primary offense, petitioner is still serving a sentence for a violent felony offense, thus he is not presently convicted of a nonviolent felony as

---

[3]     The voters are presumed to have been aware of existing laws, including judicial interpretations of similar provisions and statutory language, at the time the initiative was enacted. (*People v. Gangl* (2019) 42 Cal.App.5th 58, 64-65.)

6

described in section 32(a)(1).  Accordingly, he is ineligible for early parole consideration under that provision.


                                                                        /S/

                                                                   Robie, Acting P. J.