Filed 7/24/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ARPRUBERTITO P. BONTILAO,<br><br>  Petitioner,<br><br>  v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>  Respondent;<br><br>BOARD OF PAROLE HEARINGS,<br><br>  Real Party in Interest. | H046157<br>(Santa Clara County<br> Super. Ct. No. 206077) |

In this case we consider the timeliness of a motion to disqualify a judge pursuant to Code of Civil Procedure section 170.6[1] filed in connection with a petition for a writ of habeas corpus. Petitioner Arprubertito Bontilao brought a petition for a writ of habeas corpus in the superior court challenging a decision by the Board of Parole Hearings (the Board) denying him parole. Pursuant to *Maas v. Superior Court* (2016) 1 Cal.5th 962 (*Maas*), Bontilao requested that the superior court inform him of the identity of the judge assigned to consider his petition. The superior court issued an order naming a judge assigned "for all purposes" to Bontilao's habeas petition. Twenty-four days later

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

Bontilao brought a challenge under section 170.6 to the judge named in the order. The superior court struck Bontilao's challenge as untimely.

Bontilao brought a petition for writ of mandate in this court challenging the superior court's order striking his section 170.6 challenge. For the reasons explained below, we conclude that the superior court's order naming the judge assigned to Bontilao's petition constituted an all purpose assignment within the meaning of section 170.6, subdivision (a)(2). As Bontilao's section 170.6 challenge was not timely filed under the statute's all purpose assignment rule, we deny Bontilao's petition for a writ of mandate.

## I. FACTS AND PROCEDURAL BACKGROUND

In 1999, Bontilao was convicted of second degree murder and sentenced by Judge Ball of the Santa Clara County Superior Court to 15 years to life in prison. This court affirmed his conviction on direct appeal and simultaneously denied a petition for a writ of habeas corpus he filed with this court. (*People v. Bontilao* (Nov. 3, 2000, H020362) [nonpub. opn.]; *In re Arprubertito Bontilao* (Nov. 3, 2000, H021875) [nonpub. opn.].)

In April 2018, Bontilao filed a petition for writ of habeas corpus in Santa Clara County Superior Court challenging a 2017 decision by the Board denying him parole. On May 4, 2018, Bontilao sent a letter brief to the superior court pursuant to *Maas*, *supra*, 1 Cal.5th 962, requesting the identity of the judge assigned to adjudicate his habeas petition. On May 17, 2018, the superior court issued an order notifying Bontilao that the petition had been assigned to Judge Weinstein "for all purposes."

On June 29, 2018, the superior court filed a second order notifying Bontilao that Judge Weinstein was unavailable, and the matter was "reassigned to the Honorable Vanessa A. Zecher (the undersigned) for all purposes." The order's proof of service indicated that it was mailed to Bontilao on June 29, 2018, the same day it was filed. In light of the judicial reassignment, the court order also extended the time for the superior court to issue its order on Bontilao's petition.

2

Bontilao received the superior court's June 29, 2018 order on July 3, 2018. On July 23, 2018, Bontilao served a challenge against Judge Zecher pursuant to Code of Civil Procedure section 170.6. Bontilao's challenge was dated July 20, 2018, and he delivered it to prison officials for mailing on July 23, 2018. On August 16, 2018, Judge Zecher issued an order striking the challenge as untimely under the all purpose assignment rule.

On August 31, 2018, Bontilao filed a petition for writ of mandate in this court, which this court summarily denied. Bontilao filed a petition for review in the California Supreme Court. The Supreme Court granted the petition and transferred the matter back to this court with directions to vacate our previous order and to issue an order directing respondent superior court to show cause why the relief sought in the petition should not be granted.

We issued an order to show cause, appointed counsel for Bontilao, provided the Board the opportunity to file a return in opposition to the writ, and gave Bontilao the opportunity to file a reply to the return.

Counsel for Bontilao filed an application for leave to file a supplemental petition for writ of mandate and included several supporting declarations and arguments. This court granted in part and denied in part Bontilao's application. We ordered the supplemental petition and supporting exhibits to be considered as supplemental points and authorities in support of the petition, and we directed the clerk of this court to file the supplemental points and authorities and to lodge the supporting exhibits. We also provided the Board the opportunity to file a response and Bontilao the opportunity to file a reply to the response. We received responsive briefing from both the Board and Bontilao.

## II.  DISCUSSION

Bontilao's petition for a writ of mandate challenges the superior court's order striking his motion to disqualify Judge Zecher pursuant to section 170.6. Courts of

3

Appeal reviewing section 170.6 orders frequently describe the appellate standard of review for such orders as abuse of discretion. (See, e.g., *Entente Design, Inc. v. Superior Court* (2013) 214 Cal.App.4th 385, 389.) However, trial courts have no discretion to deny a section 170.6 motion filed in compliance with the statute's procedures. (*Maas*, *supra*, 1 Cal.5th at p. 972.) Because the trial court exercises no discretion when considering a section 170.6 motion, it is "appropriate to review a decision granting or denying a peremptory challenge under section 170.6 as an error of law. Therefore we review under the nondeferential de novo standard." (*Ziesmer v. Superior Court* (2003) 107 Cal.App.4th 360, 363.)

A. *General Principles of Section 170.6*

Section 170.6, subdivision (a)(1), sets out the statute's general principle: "A judge . . . of a superior court of the State of California shall not try a civil or criminal action or special proceeding of any kind or character nor hear any matter therein that involves a contested issue of law or fact when it is established as provided in this section that the judge or court commissioner is prejudiced against a party or attorney or the interest of a party or attorney appearing in the action or proceeding." The provision " 'is to be liberally construed in favor of allowing a peremptory challenge, and a challenge should be denied only if the statute absolutely forbids it.' " (*Maas*, *supra*, 1 Cal.5th at p. 973.) Because the right to disqualify a judge under section 170.6 is "automatic," in that a litigant need not show actual prejudice by the challenged judge (*Solberg v. Superior Court* (1977) 19 Cal.3d 182, 193 (*Solberg*)), "the statute restricts both the number and the timing of a peremptory challenge against a judge." (*Maas*, at p. 973.)

B. *Section 170.6 and Habeas Corpus Proceedings*

In *Maas*, *supra*, 1 Cal.5th 962, the California Supreme Court addressed the application of section 170.6 to a request by habeas petitioner Maas that the superior court provide him the identity of the judge assigned to his habeas petition. (*Maas*, at p. 970.) Maas requested the identity of the judge approximately one week after he first filed his

4

petition for writ of habeas corpus. (*Id*. at p. 971.) The superior court summarily denied Maas's petition without informing him of the identity of the judge to whom his petition had been assigned. (*Ibid*.) Maas filed a second habeas petition, raising similar claims and also complaining that the superior court had failed to notify him of the judge assigned to his first petition. (*Ibid*.) In connection with the second petition, Maas filed a declaration stating that he would have moved to disqualify the assigned judge under section 170.6 had Maas been informed of the judge's identity before the superior court summarily denied his petition. (*Maas,* at p. 971.)

Section 170.6 does not explicitly reference habeas corpus proceedings. In assessing Maas's claim that the superior court erred under section 170.6 in its treatment of Maas's habeas corpus petition, the California Supreme Court examined the language of the statute and case law interpreting both section 170.6 and habeas corpus proceedings under California law.

The Supreme Court concluded that the superior court erred. "[A] petitioner who asks to be informed of the identity of the judge assigned to examine his or her habeas corpus petition prior to the judge's ruling on the petition is entitled to notice of that assignment. The petitioner is further entitled to peremptorily challenge the assigned judge under section 170.6, so long as all of the procedural requirements of that provision have been satisfied, including the requirement that the assigned judge not have participated in petitioner's underlying criminal action." (*Maas*, *supra*, 1 Cal.5th at pp. 982–983.)

In reaching this conclusion, the California Supreme Court made several determinations relevant to our consideration of Bontilao's petition. The court concluded that "a habeas corpus proceeding is a 'special proceeding' within the meaning of section 170.6." (*Maas*, *supra*, 1 Cal.5th at p. 975.) It noted that "Section 170.6 does not define 'civil or criminal action' or 'special proceeding,' but these two classes of judicial remedies (§ 20) are defined in other provisions in the Code of Civil Procedure. An

5

'action,' which can be either civil or criminal (§ 24), is an ordinary court proceeding by which one party prosecutes another to protect a right, to prevent a wrong, or to punish for a criminal offense. (§ 22.) All other judicial remedies that are not actions are 'special proceeding[s].' (§ 23.)" (*Ibid.*)

The Supreme Court in *Maas* rejected the Attorney General's contention that merely filing a habeas corpus petition (without the subsequent issuance of an order to show cause) does not constitute a "proceeding" under section 170.6. (*Maas*, *supra*, 1 Cal.5th at pp. 976–977.) The court equally did not embrace the Attorney General's argument that references in section 170.6, subdivision (a)(1), to a judge "try[ing]" a special proceeding or "hear[ing]" a matter necessarily contemplate a pending trial or hearing in order for a section 170.6 challenge to be made. (*Maas*, at p. 977.)

The court reasoned "a judge who decides whether a petition for writ of habeas corpus has stated a prima facie case for relief hears and resolves a contested issue of law, within the meaning of section 170.6, subdivision (a)(1), because the judge is called upon to decide questions of law presented by the petition." (*Maas*, *supra*, 1 Cal.5th at p. 977.) The court agreed with Maas that the language in section 170.6, subdivision (a)(1), cited by the Attorney General could be read as " 'examine judicially' " or " 'to decide.' " (*Maas*, at p. 977.) Therefore, Maas had the right to file a section 170.6 challenge to the judge assigned to his habeas corpus petition, even in the absence of any pending hearing or trial. (See *Maas*, at pp. 978–979.)

The court in *Maas* did observe that, under some circumstances, a habeas corpus petitioner will be unable to successfully challenge the assigned judge under section 170.6. For example, a petitioner may not challenge the judge assigned to his or her habeas corpus petition if that judge presided over his or trial. (*Maas*, *supra*, 1 Cal.5th at p. 980.)

Finally, because Maas had "promptly requested notice of the identity of the judge assigned to examine and rule on his habeas corpus petition," the court declined to address the standards for determining the timeliness of a section 170.6 motion filed by a habeas

6

corpus petitioner. (*Maas*, *supra*, 1 Cal.5th at p. 983, fn. 3.) No published decision from any Court of Appeal has yet addressed the timeliness of section 170.6 motions in light of *Maas.*

### C. *Timeliness of Section 170.6 Motions: General Principles*

We note at the outset the difficulty of determining the timeliness of a section 170.6 challenge to a judge assigned to a petition for writ of habeas corpus. Section 170.6 does not mention habeas corpus proceedings or, for that matter, any writ or postconviction relief petitions. Many of the time periods set out in section 170.6 are calculated from the date of the commencement of trial or a hearing. (§ 170.6, subd. (a)(2).)

Habeas corpus proceedings, however, often conclude without any hearings having been held. A court may grant or deny a habeas corpus petition without conducting an evidentiary hearing on the petition. (*People v. Romero* (1994) 8 Cal.4th 728, 739 (*Romero*).) Timeliness calculations under section 170.6 in the context of habeas corpus petitions, therefore, lack the firm markers provided by the trial and hearing dates of ordinary civil and criminal proceedings.

"As a general rule, a motion for disqualification under section 170.6 is allowed any time before the commencement of the trial or hearing." (*Maas*, *supra*, 1 Cal.5th at p. 978.) "Subdivision (2) of section 170.6, however, establishes three exceptions to the general rule, namely, the '10-day/5-day' rule,[2] the 'master calendar' rule,[3] and the 'all purpose assignment' rule." (*People v. Superior Court* (*Lavi*) (1993) 4 Cal.4th 1164, 1171 (*Lavi*).) These provisions impose shorter deadlines on a party bringing a section 170.6

---

[2] Under the 10-day/5-day rule, " 'Where the judge, other than a judge assigned to the case for all purposes, court commissioner, or referee assigned to or who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing, the motion shall be made at least five days before that date.' " (*Lavi*, *supra*, 4 Cal.4th at p. 1172.)

[3] The master calendar rule applies when a case ready for trial is assigned to a department that is ready for trial. (See *Lavi*, *supra*, 4 Cal.4th at pp. 1176–1177.)

challenge than does the statute's "general rule." (*Jones v. Superior Court* (2016) 246 Cal.App.4th 390, 398 (*Jones*).)

When deciding whether a motion for disqualification is timely, a court should assess (in the following order) whether the master calendar, all purpose, or 10-day/5-day rule applies. (*Lavi*, *supra*, 4 Cal.4th at p. 1185.) If none of these exceptions applies, then a court applies the "general rule of section 170.6"—that is, the challenge may be made any time before the beginning of the trial or hearing. (*Ibid*.)

Here, neither the Board nor Bontilao contends the master calendar exception applies. The Board argues that the all purpose assignment rule relevant to criminal cases applies, and Bontilao's challenge was therefore untimely. Bontilao counters that either the 10-day/5-day or the general rule applies; under either rule his challenge was timely. Bontilao maintains that the requirements of the all purpose assignment rule were not met here for one of two independent reasons: first, under the language of section 170.6 the all purpose assignment rule does not apply to petitions for writ of habeas corpus and second, the superior court's assignment of the habeas corpus petition to Judge Zecher was not an all purpose assignment within the meaning of section 170.6, subdivision (a)(2).

D. *Timeliness of Section 170.6 Motions: The All Purpose Assignment Exception*

With respect to the all purpose assignment exception, section 170.6, subdivision (a)(2), provides in relevant part, "If directed to the trial of a criminal cause that has been assigned to a judge for all purposes, the motion shall be made to the assigned judge or to the presiding judge by a party within 10 days after notice of the all purpose assignment, or if the party has not yet appeared in the action, then within 10 days after the appearance. If directed to the trial of a civil cause that has been assigned to a judge for all purposes, the motion shall be made to the assigned judge or to the presiding judge by a party within 15 days after notice of the all purpose assignment, or if the party has not yet appeared in the action, then within 15 days after the appearance."

The California Supreme Court has stated, "for a case assignment to be an all purpose assignment, two prerequisites must be met. First, the method of assigning cases must 'instantly pinpoint' the judge whom the parties can expect to ultimately preside at trial. Second, that same judge must be expected to process the case 'in its totality' [citation], from the time of the assignment, thereby 'acquiring an expertise regarding the factual and legal issues involved, which will accelerate the legal process.' " (*Lavi*, *supra*, 4 Cal.4th at p. 1180, fns. omitted.) The court in *Lavi* declined to adopt the "impracticable standard" that the same judge "process[ ] the case 'from start to finish.' " (*Ibid*., fn. 13.) "Rather, if, at the time of the assignment, substantial matters remain to be processed in addition to trial, and the assigned judge is expected to process *all* those matters from that point on (thus allowing him or her [to] acquire expertise in, and familiarity with, the intricacies of the case), then the all purpose assignment rule may apply." (*Ibid.*)

Bontilao contends that the all purpose assignment rule does not apply to habeas corpus petitions, because the California Supreme Court has described "a habeas corpus proceeding [a]s a 'special proceeding' within the meaning of section 170.6." (*Maas*, *supra*, 1 Cal.5th at p. 975.) The text of the all purpose rule limits the exception to a "criminal cause" or a "civil cause." (§ 170.6, subd. (a)(2).)

The Board acknowledges that the all purpose assignment exception in section 170.6 does not refer to habeas corpus proceedings, but argues the application of the statute's "catch-all provision," which states "[i]n the case of trials or hearings not specifically provided for in this paragraph, the procedure specified herein shall be followed as nearly as possible." (§ 170.6, subd. (a)(2).) The Board contends that this catch-all provision supports application of the all purpose assignment exception for criminal cases to Bontilao's petition. Bontilao challenges the application of the catch-all provision, arguing that habeas corpus proceedings are "specifically provided for" in section 170.6, subdivision (a)(1) through the statute's reference to "special proceedings," and therefore the catch-all provision is inapplicable to them.

9

In evaluating these opposing positions, "[w]e apply well-settled principles of statutory construction. Our task is to discern the Legislature's intent. The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.)

We reject Bontilao's argument that section 170.6 "specifically provides" for habeas corpus proceedings. While the California Supreme Court held in *Maas* that the statute applies to habeas corpus proceedings through its reference to "special proceeding[s]," the statute does not otherwise set out any rules for special proceedings, other than in section 170.6 subdivision (a)(4), which provides "[e]xcept as provided in this section, no party or attorney shall be permitted to make more than one such motion in any one action or special proceeding pursuant to this section. In actions or special proceedings where there may be more than one plaintiff or similar party or more than one defendant or similar party appearing in the action or special proceeding, only one motion for each side may be made in any one action or special proceeding." The procedures governing the timing of section 170.6 challenges set out in subdivision (a)(2) do not reference "special proceedings" or habeas corpus petitions in any way.

Turning to the text of the all purpose assignment rule itself, neither section 170.6 nor the Code of Civil Procedure defines the phrases "criminal cause" or "civil cause" used in the all purpose assignment exception in section 170.6, subdivision (a)(2). In addition, these phrases do not appear in section 170.6, subdivision (a)(1), the text from which the California Supreme Court construed a petition for writ of habeas corpus as a

10

"special proceeding." (*Maas*, *supra*, 1 Cal.5th at p. 975.) While we agree that a petition for writ of habeas corpus is not a "criminal case" (see *In re Scott* (2003) 29 Cal.4th 783, 815), this conclusion is not dispositive to the potential application of the all purpose assignment rule to petitions for writs of habeas corpus.

*Maas* itself did not place great emphasis on the specific language of section 170.6, subdivision (a)(1), rejecting, for example, textual arguments based on its language that suggested the statute does not apply to habeas corpus petitions in which no hearing is pending. (*Maas*, *supra*, 1 Cal.5th at p. 977.) Similarly, in *Lavi*, the seminal California Supreme Court case on the exceptions to the general timing rule of section 170.6, the court did not require linguistic precision in construing the statute.

For example, the court in *Lavi* relied on analogies when determining whether assignment of a "long cause" trial for trial setting constitutes an all purpose assignment. "Section 170.6 does not specifically address the situation in which a master calendar department assigns a case to a 'long cause' trial department for trial setting. Section 170.6, subdivision (2), states: 'In the case of trials or hearings not herein specifically provided for, the procedure herein specified shall be followed as nearly as may be.' Thus, if it is determined that the assignment in this case is closely analogous to an all purpose assignment, then the all purpose assignment rule, which requires a litigant to file a disqualification motion 'within 10 days after notice of the all purpose assignment,' (*ibid*.) would apply." (*Lavi*, *supra*, 4 Cal.4th at p. 1178.) In addition, the California Supreme Court rejected as "meritless" (*ibid*., fn. 9) the contention that the absence of a rule of court allowing for assignment of a judge in criminal cases "for all purposes" (*ibid*.) and the lack of a specific reference to criminal cases in the all purpose assignment rule of section 170.6, subdivision (a)(2) meant that "there never can be an all purpose assignment in a criminal case." (*Lavi*, at p. 1178.)

Legislative history supports a broad reading of the all purpose assignment exception. The Legislature's rationale behind the insertion of the all purpose assignment

11

rule, added to section 170.6 in 1989, was to clarify the timeframe (previously set out solely in case law) within which a party must bring a section 170.6 challenge after a case had been assigned to a judge for all purposes. (*Lavi*, *supra*, 4 Cal.4th at p. 1177.) The text of the all purpose assignment created by the 1989 amendment to the statute did not distinguish between civil and criminal cases. The amendment as enacted read "If directed to the trial of a cause where there is a master calendar, the motion shall be made to the judge supervising the master calendar not later than the time the cause is assigned for trial. If directed to the trial of a cause that has been assigned to a judge for all purposes, the motion shall be made to the assigned judge or to the presiding judge by a party within 10 days after notice of the all purpose assignment, or if the party has not yet appeared in the action, then within 10 days after the appearance." (Stats. 1989, ch. 537, § 1, p. 804.) As the all purpose assignment rule made no distinction between civil and criminal cases, both were subject to the 10-day period. (*Lavi*, at p. 1178, fn. 9.)

The most natural reading of the original version of the all purpose assignment rule, which appeared in section 170.6, subdivision (a)(2), is not that its use of the word "cause" carved out proceedings from those mentioned in subdivision (a)(1), but that it encompassed all of the proceedings listed in the prior subdivision of the statute—that is "a civil or criminal action or special proceeding of any kind." (§ 170.6, subd. (a)(1).) These proceedings, of course, included petitions for writs of habeas corpus. (*Maas*, *supra*, 1 Cal.5th at p. 975.)

In 2010, the Legislature amended the all purpose assignment rule to provide a different time period for civil cases. The purpose of the amendment was to reconcile the 15-day time period to bring a motion to challenge a judge under the Trial Court Delay Reduction Act and the 10-day period set out in the all purpose assignment rule contained in section 170.6. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1894 as introduced Feb. 16, 2010, p. 2.) "In order to eliminate the confusion, this bill would create a uniform 15-day period for all <u>civil</u> cases. Criminal cases would continue to be

12

subject to the 10-day period." (*Ibid*.) This amendment, therefore, was not intended to narrow the application of the all purpose assignment rule but instead to clarify that civil cases should be subject to a different time period. The legislative history for this amendment, which is the source of the adjectives "criminal" and "civil" attached to the all purpose assignment rule, does not reference the application of the rule to petitions for habeas corpus or "special proceedings" generally. The legislative history of the all purpose assignment rule, therefore, does not support Bontilao's reading of the provision.

In addition, Bontilao's proposed reading of the application of section 170.6 timeliness rules to habeas corpus petitions would create significant practical difficulties for both courts and habeas corpus petitioners. Bontilao argues that the deadline by which a habeas corpus petitioner must bring a challenge under section 170.6 is supplied either by the general rule or the 10-day/5-day rule. Under either rule, petitioners and courts calculate the date by which the challenge must be brought by taking the day of the hearing or trial and either fixing that date as the last day for filing the challenge (in the case of the general rule) or by subtracting five days (in the case of the 10-day/5-day rule) to determine the deadline. The difficulty with applying either of these rules in the context of a habeas corpus petition is that habeas corpus proceedings rarely include any hearing dates from which the filing deadline can be calculated.

Bontilao proposes that the court and habeas corpus petitioners calculate the timeliness of a section 170.6 petition by taking the date by which the court's order on the petition for writ of habeas corpus is due under California Rules of Court (Rules of Court).[4] The Rules of Court provide that "The court must rule on a petition for writ of

---

[4] Bontilao does not directly address which timing rule should apply. He asserts that the relevant date for his section 170.6 challenge was July 30, 2018, the date to which the superior court in the June 29, 2018 order extended its time to issue an order on Bontilao's petition for a writ of habeas corpus. We presume that Bontilao's more general argument assumes that courts comply with the Rules of Court when adjudicating habeas corpus petitions.

13

habeas corpus within 60 days after the petition is filed." (Rules of Court, rule 4.551(a)(3)(A).) However, this period may be extended by the court for good cause. (Rules of Court, rule 4.551(h).) And nothing in the Rules of Court provides a minimum time before which the court can rule on a habeas corpus petition. If a court "determines that the petition does not state a prima facie case for relief or that the claims are all procedurally barred, the court will deny the petition outright, such dispositions being commonly referred to as 'summary denials.' " (*Romero*, *supra*, 8 Cal.4th at p. 737.) A court may issue an order on a habeas corpus petition within a matter of days. (See *id*. at p. 744.)

Therefore, under Bontilao's proposed reading of section 170.6, subdivision (a)(2), a court considering a habeas corpus petition may deny it before the petitioner has an opportunity to bring a section 170.6 challenge or—even worse—the petitioner's section 170.6 challenge (coming through the mail for incarcerated petitioners) and the court's order on the petition (also mailed to the prisoner) may literally cross in the mail. Bontilao provides no solution for the logistical quagmire that may result from his reading of the statute.

"[A] fundamental principle of statutory construction is that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." (*People v. Cook* (2015) 60 Cal.4th 922, 927.) Furthermore, courts have refused proposed readings of section 170.6 that would require parties and courts to "guess" about the triggering date for relevant time periods. (See, e.g., *Jones*, *supra*, 246 Cal.App.4th at p. 404 [rejecting proposed rule of constructive notice].)

For these reasons, we reject Bontilao's narrow reading of the phrases "criminal cause" and "civil cause" in section 170.6, subdivision (a)(2), and agree with the Board that the statute's provision "[i]n the case of trials or hearings not specifically provided for in this paragraph, the procedure specified herein shall be followed as nearly as possible"

14

supports application of the all purpose assignment rule to petitions for writs of habeas corpus. We conclude that, if the requirements of the all purpose assignment rule are otherwise met, the filing deadlines set out in section 170.6, subdivision (a)(2), apply to petitions for writs of habeas corpus.[5] We now examine whether the superior court's order here met the requirements of the all purpose assignment rule.

      E. *Application of the All Purpose Assignment Rule to Bontilao's Petition*

          1. <u>Whether the Court Assigned Bontilao's Petition to a Judge for all Purposes</u>

The superior court's June 29, 2018 order stated that Bontilao's habeas corpus petition had been assigned to Judge Zecher "for all purposes." While the superior court's label of the assignment "does not automatically control" the application of the timing rules of section 170.6 (*Lavi*, *supra*, 4 Cal.4th at p. 1179), it may "be viewed as prima facie evidence as to what type of assignment occurred." (*Ibid*.) "[W]e may presume an all purpose assignment occurred in the absence of evidence in the record to the contrary." (*Ibid*.) "Labels used by the court may be viewed as prima facie evidence as to what type

---

[5] The Board appears to argue that, notwithstanding *Maas,* if the all purpose assignment rule does not apply, then a habeas corpus petitioner has no right to bring a section 170.6 challenge to a judge assigned to a habeas corpus petition. The Board relies on this court's decision in *Grant v. Superior Court* (2001) 90 Cal.App.4th 518 for this proposition. In *Grant*, this court held that "the plain language of section 170.6, subdivision (1) expressly limits a peremptory challenge to those times when either a trial or a hearing involving a contested issue of law or fact is pending on the trial court's calendar." (*Id*. at p. 525.) *Grant* recognized that "the all purpose assignment rule . . . permits a peremptory challenge to an all purpose assignment judge . . . although the trial date has not been set." (*Ibid*.) But its holding that a section 170.6 challenge cannot be brought in a case in which there is no pending hearing or trial if the all purpose assignment rule does not apply may have been undercut by *Maas*'s conclusion (reached without any discussion of the all purpose assignment rule) that a habeas corpus petitioner can bring a section 170.6 challenge upon filing a petition for writ of habeas corpus without the trial court having issued an order to show cause. (See *Maas*, *supra*, 1 Cal.5th at pp. 978–979.) *Maas* did not discuss or reference this court's decision in *Grant.* Because we conclude that the all purpose assignment rule applies here, we need not resolve whether and to what extent *Grant*'s legal analysis remains relevant in light of *Maas.*

15

of assignment occurred, and the party contesting the label has the burden of establishing that the label does not fit." (*Daniel V. v. Superior Court* (2006) 139 Cal.App.4th 28, 40.)

The California Supreme Court has described the two necessary conditions for application of the all purpose assignment rule under section 170.6, subdivision (a)(2). "First, the method of assigning cases must 'instantly pinpoint' the judge whom the parties can expect to ultimately preside at trial. Second, that same judge must be expected to process the case 'in its totality' [citation], from the time of the assignment, thereby 'acquiring an expertise regarding the factual and legal issues involved, which will accelerate the legal process.' " (*Lavi*, *supra*, 4 Cal.4th at p. 1180, fns. omitted.)

Bontilao does not contest that the superior court's order "pinpoint[ed]" the judge who would preside over his habeas corpus petition, but he disagrees that the order created an expectation that a single judge would address it. Bontilao points out that his petition was reassigned from Judge Weinstein to Judge Zecher within a matter of weeks, suggesting that the assignment of his petition was "subject to the vagaries of personal and administrative necessity." (*Lavi*, *supra*, 4 Cal.4th at p. 1179.) He also rejects the notion that his habeas corpus petition dealing with a denial of parole involved complex issues. Bontilao argues that it was possible that Judge Zecher would preside over the petition to its conclusion, but it was just as likely it would be re-assigned to another judge because of the simplicity of the issues raised in his petition.

Based on the record before us, Bontilao has not carried his burden of showing that the superior court's assignment of his petition to Judge Zecher was not an all purpose assignment within the meaning of section 170.6, subdivision (a)(2). In *Lavi*, the California Supreme Court rejected the contention that the possibility that the judge assigned to the matter might change due to illness or reassignment defeats the application of the all purpose assignment exception. (*Lavi*, *supra*, 4 Cal.4th at p. 1180, fn. 13.)

Bontilao has not elicited any evidence that the Santa Clara County Superior Court routinely transfers habeas corpus petitions from one judge to another. Therefore,

16

Bontilao's claim that Judge Zecher was likely to transfer his proceeding to another judge is speculative. Although Bontilao argues that Judge Zecher's order assigning the petition to herself from Judge Weinstein is evidence that the all purpose assignment rule was not followed here, it is equally susceptible to the reading that Judge Zecher informed Bontilao of the change precisely because it ran contrary to the previous all purpose assignment of the petition to Judge Weinstein.

For these reasons, we conclude that the superior court's assignment of Bontilao's petition to Judge Zecher on June 29, 2018, was an all purpose assignment within the meaning of section 170.6, subdivision (a)(2), such that the all purpose assignment timing rules applied to Bontilao's challenge. Furthermore, because the all purpose assignment rule applied to Bontilao's case, neither the 10-day/5-day rule or in the general rule is relevant. (See *Lavi*, *supra*, 4 Cal.4th at p. 1185.)

2. <u>Whether the Criminal or Civil All Purpose Assignment Rule Applies</u>

Section 170.6, subdivision (a)(2) distinguishes between civil and criminal cases for purposes of the application of the all purpose assignment rule. For civil cases, the party must bring a motion to challenge within 15 days of the all purpose assignment; in criminal cases, the party must bring the motion within 10 days of the assignment. (§ 170.6, subd. (a)(2).) For each of the all purpose assignment rules, the clock begins to run when the party receives notice of the all purpose assignment. (*Jones*, *supra*, 246 Cal.App.4th at pp. 402–403.) The superior court issued and served its order assigning Bontilao's habeas corpus petition to Judge Zecher on June 29, 2018. Because the order was mailed to Bontilao, section 1013 extended by five days the time for Bontilao to file his section 170.6 challenge to Judge Zecher.[6] (*Motion Picture and Television Fund*

---

[6] Section 1013, subdivision (a), provides in relevant part "In case of service by mail, the notice or other paper shall be deposited in a post office, mailbox, subpost office, substation, or mail chute, or other like facility regularly maintained by the United States Postal Service, in a sealed envelope, with postage paid, addressed to the person on whom it is to be served . . . . Service is complete at the time of the deposit, but any period of

17

*Hosp. v. Superior Court* (2001) 88 Cal.App.4th 488, 494.) Therefore, if the criminal all purpose assignment rule applied, Bontilao had until July 16, 2018, to file his section 170.6 challenge.[7] If the civil all purpose assignment rule applied, he had until July 19, 2018, to file his challenge. Bontilao submitted his challenge under section 170.6 to prison officials for mailing on July 23, 2018. Therefore, his challenge was untimely whether the civil or criminal all purpose assignment rule applied to his case.

Nevertheless, for the assistance of courts considering future section 170.6 challenges in habeas corpus proceedings, we examine which all purpose assignment rule applied to Bontilao's petition. As discussed above, neither of the all purpose assignment rules applies on its own terms to petitions for writs of habeas corpus. Furthermore, as described above, the legislative history for the all purpose assignment provisions in section 170.6, subdivision (a)(2) does not clarify whether the Legislature intended petitions for writs of habeas corpus to be subject to the rules applicable to civil or criminal cases. But the legislative history for the time period applicable to civil cases demonstrates that the Legislature's focus was on a conflict with the Trial Court Delay Reduction Act, and not on petitions for writs of habeas corpus. (See Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1894 as introduced Feb. 16, 2010, p. 2.)

In the absence of direct statutory guidance or relevant legislative history, we apply the catch-all provision of section 170.6, which states "[i]n the case of trials or hearings not specifically provided for in this paragraph, the procedure specified herein shall be followed as nearly as possible." (§ 170.6, subd. (a)(2).) We conclude a criminal case

---

notice and any right or duty to do any act or make any response within any period or on a date certain after service of the document, which time period or date is prescribed by statute or rule of court, shall be extended five calendar days, upon service by mail, if the place of address and the place of mailing is within the State of California."

[7] As the 15th day fell on Saturday July 14, 2018, the deadline was extended until Monday, July 16, 2018. (See § 12a.)

18

rather than a civil case provides the closest analogy to Bontilao's petition challenging the Board's decision denying him parole.

The availability of the writ of habeas corpus in California is "implemented by [Penal Code] section 1473, subdivision (a)." (*In re Cook* (2019) 7 Cal.5th 439, 452.) Bontilao's habeas corpus petition challenged the Board's decision to deny him parole in his life sentence for second degree murder. "[H]abeas corpus is a proper remedy to test the propriety of proceedings before the [B]oard." (*In re Powell* (1988) 45 Cal.3d 894, 903.) The California Supreme Court has analogized the Board's denial of suitability for parole to a decision related to the prisoner's criminal sentence. (*In re Roberts* (2005) 36 Cal.4th 575, 587–588, 590.) A criminal sentence is clearly part of a criminal case. For these reasons, we apply the criminal all purpose assignment rule to Bontilao's habeas corpus petition. Applying this rule, Bontilao had 10 days from the date he was noticed of the superior court's order assigning his petition to Judge Zecher to file his challenge to her under section 170.6.

Bontilao delivered his challenge to the prison authorities for mailing on July 23, 2018. Under the "prison-delivery rule," this date—and not the date the superior court actually filed his challenge—is the appropriate date to consider when assessing the timeliness of his challenge. (See *Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 120–121 (*Silverbrand*) [describing the prison-delivery rule].) Bontilao was required to file his challenge by July 16, and it was therefore untimely when given to the prison officials on July 23.

F. *Due Process*

Bontilao argues that, even if his section 170.6 challenge were untimely, this court should excuse his late filing on due process grounds and deem his challenge "constructively filed on time." Specifically, Bontilao contends that he is a native Tagalog speaker with limited English proficiency, which delayed his consideration of the section 170.6 challenge; he had limited access to the law library and to the inmate who was

19

assisting him with his habeas corpus petition (including his section 170.6 challenge); and the law library contained inadequate materials on the identity of the judges in Santa Clara County forcing him to rely on a friend of his fellow inmate "to conduct the necessary research." Bontilao argues that because he was entitled under *Maas* to file a section 170.6 challenge, it would violate due process to deny his "adequate access to the court due to prison conditions beyond his control," by enforcing the timing rules contained in the all purpose assignment rule where Bontilao "acted diligently." Citing the college degree Bontilao earned while in prison, the Board disputes Bontilao's lack of proficiency in English and argues Bontilao has not established that a due process violation occurred here.

Bontilao did not raise in the superior court his lack of English proficiency in either his request for notification of the judge assigned to his petition or in his section 170.6 motion to disqualify Judge Zecher. He could, for example, have provided an explanation for his late filing of his section 170.6 challenge and requested that the superior court excuse his lack of timeliness on due process grounds. Bontilao offers this court no reason for his failure to raise this issue in the superior court. As this issue raises disputed facts, Bontilao has forfeited his challenge to the superior court's order on his section 170.6 motion based on his lack of fluency in English. (See *Lavi*, *supra*, 4 Cal.4th at p. 1173, fn. 5 [declining to consider factual arguments raised for the first time on appeal].)

We also reject Bontilao's broader due process challenge to the application of the all purpose criminal assignment rule here. The right to challenge a judge under section 170.6 is a statutory right without constitutional or common law foundations. (*The Home Ins. Co. v. Superior Court* (2005) 34 Cal.4th 1025, 1031.) Because the statute's purpose is to "promote the integrity and fairness of the judiciary," courts must grant a disqualification motion if a party has complied with the procedural conditions set forth in the statute. (*La Seigneurie U.S. Holdings, Inc. v. Superior Court* (1994) 29 Cal.App.4th 1500, 1505.) The procedural limitations embodied in the statute, which include its timing

rules, therefore play an important role in its operation because they are the only grounds on which a section 170.6 motion may be denied. They are "safeguards designed to minimize abuses" of the provision. (*Pappa v. Superior Court of Los Angeles County* (1960) 54 Cal.2d 350, 354 (*Pappa*); *Solberg*, *supra*, 19 Cal.3d at p. 197.)

We have found no authority stating that a judge may " 'waive' " the untimeliness of a section 170.6 affidavit. (See *Briggs v. Superior Court* (2001) 87 Cal.App.4th 312, 318.) Furthermore, Bontilao retains the right to challenge the judge assigned to his petition under section 170.1 if he has evidence of actual bias against him. (See *Pappa*, *supra*, 54 Cal.2d at p. 354.)

The prison-delivery rule, which we have used in our calculation of the time in which Bontilao had to file his challenge, recognizes the difficulty for incarcerated petitioners of complying with timeliness rules and accommodates these concerns. (See *Silverbrand*, *supra*, 46 Cal.4th at p. 121.) Moreover, some of the issues Bontilao cites as due process violations denying him access to courts—the challenge of researching individual judges and delay in speaking with the person assisting him in his petition— apply to individuals who are not incarcerated. Bontilao requested, as was his right under *Maas*, the name of the judge assigned to his habeas corpus petition. Having asked for and received this information, he should have been prepared to move quickly on any motion to disqualify the assigned judge under section 170.6.

We recognize that 10 days provides little time for a habeas corpus petitioner filing a petition arising out of a criminal case to file a challenge to a judge assigned for all purposes. Furthermore, a prisoner challenging a parole decision, as was the case here, must file the habeas corpus petition in the superior court of his or her conviction, which might be geographically removed from his or her place of incarceration. (*Roberts*, *supra*, 36 Cal.4th at p. 593.) The Legislature may wish to consider revisions to section 170.6 to explicitly address its application to petitions for writs of habeas corpus and other forms of postconviction relief.

21

Nevertheless, as a court we do not have the authority to rewrite statutory text. Applying the text of section 170.6 and case law interpreting the statute, we conclude that in its June 29, 2018 order the superior court assigned a judge for all purposes to consider Bontilao's habeas corpus petition, and Bontilao failed to challenge that assignment by the statutory deadline. (§ 170.6, subd. (a)(2).) Therefore, the superior court properly struck his section 170.6 challenge as untimely.

## III. DISPOSITION

The petition for writ of mandate is denied.

_____
DANNER, J.

WE CONCUR:


_____
GREENWOOD, P.J.



_____
BAMATTRE-MANOUKIAN, J.




***Bontilao v. Superior Court***
**H046157**

| Trial court: | Santa Clara County Superior Court |
|---|---|
| Trial judge: | Honorable Vanessa A. Zecher |
| Counsel for petitioner: | Jonathan Grossman, under appointment by the Court of Appeal |
| Counsel for real party in interest: | Xavier Becerra, Attorney General<br>Phillip J. Lindsay, Senior Assistant Attorney General<br>Sara J. Romano, Supervising Deputy Attorney General<br>Jennifer G. Ross, Deputy Attorney General |

*Bontilao v. Superior Court*
**H046157**